Hear ye, hear ye, this Honorable Appellate Court for the Second District is now open. The Honorable Justice Anne B. Jorgensen presiding. Your Honors, the first case on the docket is No. 2240093, Jacqueline Noto, Plaintiff Appellant v. Eric Weiss, State's Attorney of Kendall County, Defendant Appellee. Arguing for the Appellant is Mr. Bradley A. Scafish. Arguing for the Appellee is Ms. Julie A. Brook. Are you both ready to proceed? Counsel, then, when you're ready. May it please the Court, Counsel, Audience, thank you everyone for being here. As I'm sure the panel knows, this case involves the first Assistant State's Attorney of Kendall County, Mark Shlifka, and the facts around his engaging in an inappropriate sexual relationship with the Plaintiff, Ms. Noto, who was at the time a complaining witness in two battery cases and was also a criminal defendant being prosecuted by Kendall County. The Appellee, Eric Weiss, was the State's Attorney of Kendall County and was Shlifka's supervisor at the time. We allege in our case that Mr. Weiss knew or should have known of the inappropriate relationship and that he is therefore liable for reckless supervision under count three of the complaint and violation of the Illinois Gender Violence Act under count two of the complaint. Counselor? Yes? To borrow a phrase, what did the State's Attorney Weiss know and when did he know it? Sure. As we've alleged in the complaint, he knew Ms. Noto by sight. That's a conclusion, isn't it? I don't think it is, with all due respect. Saying that he knows her by sight is a factual allegation. He either knows her by sight or he doesn't. I know it's been argued by my opponent that that's a conclusion, but just as if I were to say that I know her by sight, either I do or I don't. It's been alleged as true. But what allegation, factual allegation, other than the allegation that he knows her, is there, for example, that he actually saw them, not Weiss and a woman, but saw them and knew who she was? Is there any factual allegation to that extent? Well, there is the allegation, one, that he already knew her by sight, two, that he saw her in a car and commented about having seen her, not just a woman, but that he commented about having seen the plaintiff with Mr. Slivka, that he saw the plaintiff with Mr. Slivka, again, at a family law attorney's office for an unrelated matter where they were, once again together, unrelated to the Kendall County State's Attorney's professional duties. How does seeing an individual, a woman, with one of your assistant state's attorneys lead to the conclusion that they're having a sexual relationship? Well, that's not an unreasonable leap, but it certainly leads to the immediate appearance that something untoward is going on when a person being prosecuted by your office is spending time out of work duties in a car, in an office on an unrelated matter, with the person prosecuting her. That is not an appropriate relationship, and of course there's a massive disparity in the power between the two people involved in this relationship. Does knowledge of an improper relationship qualify under the Gender Violence Act? Under the Gender Violence Act, it does. As we've cited, the court used a narrow interpretation, essentially saying that the Gender Violence Act definition of assisting had to be something affirmative, active, that knowledge plus inaction wasn't enough. We've cited the De Fiore case for a broad interpretation, that courts must consider the reason and necessity for the law and the evils sought to be remedied and the purpose to be achieved. The statute on statutes also says the terms are to be liberally construed. When you take into account what's sought to be avoided by the Illinois Gender Violence Act, which is victimizing people in vulnerable populations, a broad interpretation is far more appropriate here, certainly at the motion to dismiss state of the case. This matter needs to be moved forward to go through the discovery process because at this point, it's not allowing somebody who's alleged that she's been taken advantage of due to her vulnerable position to even get to the discovery phase, let alone summary judgment, trial court, that part of the case. We cite the Gasset case, which is good background, that the courts have allowed even the pursuit of gender violence claims against a corporate or an institutional entity. And in here, we're talking about the employer, but it's not an entity. It's, in fact, another human being who stands in a professional responsibility over Mr. Schliffka and we allege had personal knowledge of what was going on. A main point is that the court analyzed count three, the reckless supervision count, under the wrong standard. They used the, Judge Waller used the particular unfitness standard. We've cited the Doe versus Coe case that only general foreseeability and not particular unfitness is required. This is conceded by defendant in their response brief. In Doe versus Coe, the plaintiff alleged acts that took place in the workplace. At the workplace and in the workplace. And the defendant was under the direct supervision of the pastor. And the pastor was told about young women sitting, young girls I should say, sitting on his lap, etc. So how does that case help your case? It helps because the ruling of the case is what's required as general foreseeability, not particular unfitness, and we can establish that here. Again, our facts aren't identical, but I would say on some aspects, our facts are stronger. In the, in our case, the plaintiff is actually being prosecuted for crimes. Her very liberty is at stake, and if she crosses this gentleman who's pursuing a sexual relationship with her, he may throw the book at her harder, or take other actions, or fail to offer her a plea deal on something that wouldn't be done to another criminal defendant if she rebuffs his- Was she presented by counsel during this time that she was being prosecuted? I believe she had a public defender at that time. Her attorney? Right. And she could have made some overture to her attorney, and she did none, nor is there any allegation of that, right? There's no allegation that she did that. I think those are background facts that might be argued by my opponent if we get to the trial court stage. But, of course, in many cases where inappropriate sexual relationships happen, when you look back with 20-20 hindsight, there's a lot of things you could argue that the victim may have done that might have helped them at the time that doesn't make what the perpetrator did any less offensive or actionable. Let's be clear here. We're not talking about the first assistant. We're talking about Mr. Weiss. Correct, but we need the wrongful activity and then the failure to supervise and the encouraging or assisting under the two counts here, that's what was done by Mr. Weiss, to allow this to go on and continue going on. Immediately after Mr. Weiss was informed of the allegations, officially informed, the Schliffka was gone. I mean, he was essentially fired, right? After a formal, again, we allege that Mr. Weiss was aware of this and or should have been aware far earlier than that, that it took a public- Go ahead, I'm sorry. I'm sorry, that it took bringing it to his attention in a public way to where his own reputation was at stake. So I don't think it's fair to say, especially as we've alleged, that as soon as he knew something, he did something. In fact, that's kind of the crux of our complaint is that he did know before that and took no action. One would expect if this kind of a relationship was going on and was known by the state's attorney, that the state's attorney would have taken action. Well- I mean, that's the responsibility of the state's attorney. He has an ethical obligation under the rules of professional conduct to take action. So apparently, at least on its face, none of his employees reported this to him. We don't know about what other employees may have- How many employees does this kind of county state's attorney have, do you know? I don't know offhand, exactly. Numerous, yes. Assistant state's attorney, staff, investigators, yet no one blew the whistle on Schliffka's relationship with the plaintiff. Well, again, the allegations are that the boss, Mr. Weiss, already knew. So what his colleagues that may stand in a similar position to him know, might make no difference if their understanding, as we've alleged, is that the boss already knew and has taken no action. Apparently, this is tacitly approved. All the other assistants are going to put blinders on and not take any action. Well, I think that assumes that all the other assistants knew what was going on. The allegations are that Weiss knew what was going on, that he had personal knowledge because of the specific instances, we've alleged, where he saw Mr. Schliffka with the plaintiff. We haven't alleged that numerous other individuals did or did not see, and that might be something that can be gone into at the discovery phase. Well, counsel, in- Go ahead, that's okay, go ahead. In GASIC, or GASIC, you had cited before. Sure. There, the perpetrator was the subject of many complaints for sexual harassment, where you have very similar language. Your firm was on both cases, this case and GASIC. The allegation was the defendant had a legal duty to protect from known sexual deviant propensities of their employee, which is also alleged here. But in GASIC, you have the perpetrator as being the subject of many complaints. What do you have here besides having seen them together at these locations? Well, I think, not to bury that, I mean, having seen them together is a pretty big fact. It's a different, as opposed to in the GASIC case, where there wasn't necessarily knowledge that he was abusing his position to that particular plaintiff until the point at which it happened. In this case- Right, but in GASIC, the property manager had sexually harassed other people who had complained to the management, and that was the basis for that complaint. So, having seen them, I understand what you're saying with that, but what knowledge of sexually deviant propensities, for example, can you impute? Or what facts can you point to that we should impute that level of knowledge? I think the actions that were seen by Mr. Weiss going forward impute a certain knowledge to him based on the disparity in power. Again, this isn't just a maintenance man at an apartment complex and one of the residents. This is a high-powered assistant state's attorney prosecuting that very individual for crimes at that time, and also relying on that individual's cooperation to prosecute other individuals. I think once he has seen them together, he's on notice. Something's not right here. It's hard to envision a scenario where it would be appropriate for an assistant state's attorney to be riding in his personal vehicle with somebody he's prosecuting if it, in fact, has nothing to do with the crime. And when would that ever arise? You do allege, go ahead. Here, the question, as I understood it, was where are your allegations of a propensity in the first assistant? Not Mr. Weiss's, your position that he knew or should have known. Where's the propensity and how is it alleged? Well, we've alleged, I want to be clear of that. I don't think the propensity is the linchpin that ties all this together. It's one of many allegations in our complaint. We believe that Mr. Weiss should have been on notice. Question is, counsel. Sure. Where is the allegation of propensity? That you keep suggesting that propensity was one of your factors. And my question is, where are the factual allegations to support that factor? I think it is, in and of itself, the factual allegation. We are alleging that his boss knew that he had this propensity. And that's not a conclusion? I don't think so. I think it's an ultimate fact that will be supported by other facts that come out in the discovery process. Counsel, I want to get to the statute. So you cited Section 10 of the Act, but Section 11 is where employer liability is defined. There are a couple of aspects to that that I don't feel as if you've addressed yet. So I wanted to bring that up. So one is that an employer is only liable for gender-related violence committed in the workplace while the employee was directly performing the job duties. So in the workplace, how would you have us define that? I think you may be referring to the new amendment to the statute that allows for direct actions under that section against the employer. Now, that actually came into effect after our facts. And if that had been the case, there may have been a different way we would have alleged it. But even before that amendment came into play, we have, under the Gassick case, the fact that an institution, in that case, the one that did employ the person, it's not specifically laying out employer liability, but it is saying that an employer is one of the types of entities or persons who can be held liable under the portion of the act that allows for encouraging or assisting. Under the rules of professional conduct and also the ABA standards, a prosecutor is a prosecutor 24 hours a day, 365 days a year, correct? Correct. All of his relationships, whether they're in the workplace or outside the workplace, if they would pose a conflict of interest, both the lead prosecutor, the state's attorney, and the individual has a responsibility to take action to avoid the conflict. Right? I would agree. So it's a little different than your traditional workplace. Correct. Yes. Many people, their employee, maybe having a relationship with somebody they happen to meet on the job as a customer of the business, and if we're talking about a restaurant or a tire shop, I don't see the conflict of interest. There's a major conflict of interest here due to the ethical responsibilities of a state's attorney's employee. The defendant, after conceding that the proper standard is general foreseeability but not particular unfitness, argues that they've still made a point because we can't establish general foreseeability. I believe all of the facts that we've gone over, and I don't want to repeat them all, but all of the specific facts alleged make the case for general foreseeability. And while under In Re Haley D, normally when the court has applied the wrong standard, the first course of action the appellate court might take would be to reverse and remand for application of the proper standard. I believe here the court can take the additional step of reversing without remanding on that issue, because the facts that are not an issue, or that at least have been properly alleged that have to be taken as true, establish the general foreseeability. All right, counsel, I note that your time is up. Yes. Of course, we'll have an opportunity for a reply. Okay, thank you very much. Thank you. Counsel? Thank you. May it please the court, counsel, the audience. I'm here on behalf of the Appley-Kendall County State's Attorney, Eric Weiss. The trial court correctly granted the motion to dismiss the First Amendment complaint as to both claims brought against him. The first claim was in count two, and that was under the Illinois Gender Violence Act, or the Act. Under that Act, State's Attorney Weiss can only be liable if he personally encouraged or assisted the acts or act of gender-related violence, or if he committed them. And there's no dispute that he did not commit any acts of gender-related violence against Ms. Noto. Let me ask you this, just to follow up on a question I asked counsel. A prosecutor is a prosecutor all the time, correct? Correct. Yeah, and can we presume that Shliffka, generally speaking, abided by the rules of professional conduct? Absolutely not. Why not? Because his, when he- Would you agree, would you agree, let me- Yeah. Would you agree that the rules of professional conduct would require Shliffka and the ABA standards? ABA standard 3-1.7G provides that a prosecutor should disclose to his or her supervisor any facts or interests that could reasonably be viewed as raising a potential conflict of interest. And your argument is that Shliffka just didn't pay any attention to his obligation to report the conflict. He violated that, absolutely. And I will say it's not in the four corners of the complaint, but Mr. Shliffka is subject of ARDC action right now that State's Attorney Weiss fully supports that. Because if he engaged in that misconduct, he should be subject to whatever disciplinary rules apply to this situation. Did State's Attorney Weiss report Shliffka or somebody else? I believe that it was reported at the time. I know for sure that when he became aware of this relationship, that his office recused themselves from any of these cases. And there were separate attorneys outside of the State's Attorney Weiss. My question is, did he report Shliffka? Honestly, Your Honor, I don't recall. He may have- Well, he was obligated to report. Yeah, he was obligated to. I'm assuming he did, but I don't want to say on the record he did. But, counsel, none of that is in the record, correct? None of that is in the record. Thank you. I will say, though, that certainly there is- The complaint is public record. We can take judicial notice of the complaint, can we not? You certainly can, absolutely. And I will say that I believe that this court, many of you have served previously as county state's attorneys or in the state's attorney's office. And you certainly would be aware of the fact that it is completely conclusory to suggest that you would have personal knowledge of every single criminal defendant that is being prosecuted by your office, much less the identity of the crime victims that your office is prosecuting cases on their behalf. But in the complaint, don't we just have to take the allegations at face value? So they've pled that actual knowledge existed of a relationship. So what does the statute say about the duty to investigate or stop either that relationship or violence as defined in the act? So, first of all, we would take issue with the idea that he had knowledge. Because Illinois is a fact-pleading state. And there are a number of cases that we've cited to support the idea that claims such as this that have been made by the same law firm in the past are conclusory. They're not factual. Under the act, it requires affirmative action. You have to do something. Inaction is not enough. So there have been at least four federal district court decisions that have held that inaction is enough. I understand and appreciate those decisions are not binding on this court. However, there has been no case cited by Ms. Noto's counsel that suggests that inaction under the act is enough to establish an obligation on behalf of states attorney-wise to do anything. So is there any circumstance in which personally encouraging or assisting under the act can be done by inaction, by having knowledge of a scenario and refusing to take action? Not any cases that we were able to locate. All of the cases that we were able to locate suggest that inaction is not enough. I mean, it's similar to, there's obviously a number of students here who are considering going to law school. And I would maybe, we would have knowledge of the fact that they have an interest in attending law school. Maybe we would know that they had filled out applications. Maybe we would be aware that they were visiting law schools and looking at those schools. Have any of us personally encouraged or assisted them in that process? No, absolutely not. There has to be some action on our part to rise the level of liability under the act. And that's- Couldn't the decision or the action be to choose not to act in the face of an obvious ethical violation? You know, it's essentially, Your Honor is suggesting that condoning misconduct is, does that rise the level of a violation of the act? And I don't know that it really does. Because the legislature was very specific in the language that they used. And it was encourage or assist, not condone. Condone is nowhere in the language of the statute. So that's simply not enough under our interpretation of that law. Did the matter here change the analysis because Mr. Shipka was the first assistant? Someone who we would assume has far more daily or regular contact with Mr. Weiss than perhaps an assistant in traffic court. I don't think so, simply because of the fact that there hasn't been established by facts in this case. That they discussed this particular case and that there was any knowledge. And keep in mind, in the allegations in the complaint, they were given an opportunity to replete. And they added two additional facts. The first was that they were driving and State's Attorney Weiss allegedly saw them. But specifically, what they allege, which is factual, is that Defendant Schliffa later told the plaintiff that Eric had mentioned that he saw them. And then they put in parentheses, two people in a car. Not that he saw Ms. Nodo in the car, that he saw two people in the car. That doesn't establish knowledge at all. The second one is that they were at a private attorney's office. And at the time of this appointment, Eric Weiss coincidentally had an appointment in the same law office around the same time and he saw the plaintiff and Schliffa together. These are two, a random person that he sees with Mr. Schliffa. There's no factual allegation in the complaint that then Mr. or State's Attorney Weiss introduced himself to Ms. Nodo. And she disclosed that she was a criminal defendant or that she was a victim in a case that was being prosecuted by his office. Those are the facts that would establish knowledge on the part of State's Attorney Weiss that are lacking here. Keep in mind that when the second motion to dismiss was granted, the trial court gave them leave to amend their complaint. They then filed a motion with the court saying we know of no additional facts. So it's not as though there is some other information that is being withheld here that they know of and they didn't include in the complaint. They were given two opportunities, there are no such facts. So the other point I want to make is that because Illinois is a fact pleading state, Ms. Nodo's allegation that Schliffa had known sexual deviant propensities, but failed to allege any facts supporting that conclusion. Same thing, there's no facts showing that State's Attorney Weiss would be aware that even if he knew who Ms. Nodo was, the fact that they were together in public, there's a huge leap of logic to suggest then that he would sexually assault her. That's not warranted by the facts set forth here, that State's Attorney Weiss would have that knowledge. In terms of the reckless supervision count, Ms. Nodo alleges that State's Attorney Weiss recklessly supervised Schliffa by not monitoring his interactions with female complaining witnesses and criminal defendants and failed to ensure Schliffa was following office policies. So we certainly agree with Ms. Nodo that an employer has a duty to supervise employees to make sure they follow the law pursuant to the Supreme Court case of Doe v. Coe. But initially, Ms. Nodo is suggesting that this Court should remand the case. That's not necessary here because it's a de novo standard. The cases that they cite in support of that all involved after a bench trial or there was some evidentiary hearing, whereas here we're just looking at the four corners of the complaint. Under de novo rule review, this Court can certainly affirm on that basis. The focus of the reckless supervision count is on general foreseeability. And in that Doe v. Coe case, the Supreme Court addressed the issue of the extent to which an employer must supervise the employee. And per co, the duty to control the employee arises when the employer has reason to know or suspect that a certain employee will engage in potentially dangerous or tortious conduct. Those facts are missing here. Certainly in the Coe case, like the Court suggested, that occurred in the workplace. The inappropriate relationship was with a minor child. The pastor had been notified by individuals at the church of this inappropriate activity. All of those facts are missing here. The only facts we have here are just this seeing a random person in a car with Mr. Schliffka and also seeing somebody in a private attorney's office, both in public places. There's no allegation that he saw Ms. Schliffka walking into a hotel with him in the middle of the day and knew who he was. It's anything like that. That's missing from the complaint. There's basically no facts that establish that State's Attorney Weiss had a duty to supervise Schliffka in the first place, to control him in order to prevent an assault because it's not generally foreseeable that the assault would occur. So if you consider what exactly is foreseeability, and under the Hills versus Bridgeview Little League Association, the Illinois Supreme Court defined it at that which is objectively reasonable to expect, not merely what might conceivably occur. And that's what really is alleged here, is something that conceivably could happen, but would you expect that it's going to happen? You would not. With children, in Doe versus Coe, the church had a policy in place that adults were not to be alone with children. Yeah, correct. I mean, it's completely different. Completely different. And I also want to point out the Hills Court, they went on to say that serious crimes are generally unforeseeable because they're different in nature from what employees in a lawful occupation are expected to do. So the conclusory nature of these allegations were previously rejected in the Ward versus Kuta case, and that Ward case really is the case that is most directly on point to this situation because it involved an attorney, it involved people who are both adults, they were not minors. And there was nothing in that case to indicate that even had the firm seen them outside of the office, that would have put them on notice that the attorney was harassing or assaulting the plaintiff. The same situation is here. So for the same reason that simply seeing Ms. Noto in the car or in this attorney's office would not cause State's attorney-wise to know that Schliffka was allegedly this sexual predator, which again, there's no facts to support that allegation in the first place. So the appellate court in Dennis versus Pace-Suburban Bus also dismissed a negligence supervision case, and that one was the plaintiff offered only conclusory allegations that the employer should have discovered the employee's sexual proclivities before he sexually assaulted the plaintiff. I mean, at the end of the day, this comes down to whether you follow the Coe case, which we all, I think, agree does not apply here versus the Ward case or the Dennis case, which are directly on point. And for all those reasons, the court should affirm dismissal of the complaint with prejudice as to State's attorney-wise. Thank you very much. If you have no further questions. Any additional questions? All right, thank you very much, counsel, for your argument. Thank you. Do you wish to reply? I do. Okay. One of the arguments made by counsel was that it was conclusory to suggest that Mr. Weiss had personal knowledge of every single defendant being prosecuted by his county. I think the panel has picked up on this, but again, that was not the allegation. The allegation was that he did have knowledge of this particular defendant. So whether or not he has knowledge of every single one, the allegation is that he does have knowledge of this particular defendant. That's a factual allegation. Counsel made the argument at some length that knowledge and inaction is not enough. As the three of you pointed out, her only support for that is citing district court cases. She makes the argument, well, I don't see any cases that say otherwise. Could that be perhaps that there are no Illinois State cases that say otherwise because it was never intended by the legislature? This is simply a factor that the district court has come up with whole cloth that was never part of what was intended. Those cases aren't binding. They're not even worth any persuasive power. Counsel argues that condoning would not be enough. I think that was one of your questions. Well, I think the problem is this is not simply condoning the same way as whether another employee may condone of what their colleague does or doesn't do. This is the employer who has an ethical duty as an attorney and as a prosecutor and knows that the relationship between his employee as an assistant or first assistant State's attorney and a criminal defendant is inappropriate to have outside of whatever workplace interactions they should have. I grant you under Doe versus Coe, general foreseeability is all that is required. But even if Mr. Weiss knew that Ms. Noto was a defendant and a witness in a domestic violence case, even if he knew that, how does that, how do you make the leap that he knows that there's going to be or has a general knowledge that he's having a sexual relationship with the woman? Well, again, that's kind of the crux of the general foreseeability. He does not need specific knowledge that what wrong is going to occur is exactly this. But in Doe versus Coe, there was clear evidence that people told the pastor. The pastor knew that there was inappropriate relationship going on. He knew it. He knew that little girls were sitting on his lap. Right. And he was told that. There's no factual allegation here that there was any such general knowledge conveyed to Mr. Weiss. With all due respect, I would disagree. I think the knowledge is that he himself witnessed these two spending time in Mr. Schliffka's personal car outside of anything that would possibly have anything to do with prosecuting her for a crime or using her as a witness in the other matters. There's no allegation. Go ahead. You keep saying saw them in a car. The allegation is two people in a car. How does that go from two people in a car to this particular individual? Citing to page seven in our brief, what was alleged is Mr. Schliffka later told the plaintiff that Weiss mentioned that he saw the two of them, meaning Schliffka and plaintiff, in the car while driving on the highway. The allegation is specific as to that effect. Again, that has to be taken as true at this point. It's similarly. That allegation is where in the complaint? I would look to C-158. I don't have the, I'm sorry, with the brief amount of time I have in rebuttal, I don't have the actual pleading in front of me. I have the citation to our brief. But I would urge the panel to please look back at those allegations. It's also alleged that Mr. Weiss had an appointment at the law office, this family law attorney, and saw the plaintiff and Mr. Schliffka together. Again, these are specific allegations. The allegations about her, not to use counsel's term, Mr. Schliffka and some random person. That's not the nature of the allegations. The allegation is that he saw those two together and knew who she was. And again, your position is that that's enough. That statement is a statement of fact, not a conclusion. Correct. I think knowing who somebody is and seeing them together in a non-work situation is a statement of fact. And that's enough to put him on notice under the general foreseeability standard that's required by DOE. At one point, counsel said, I think her statement was, there are no facts that Mr. Weiss had a duty to supervise Mr. Schliffka to avoid this type of conduct. I would disagree with that vehemently. He had an ethical duty as an attorney, as a prosecutor, as a state's attorney of Kendall County, to supervise him for this and any other inappropriate behavior. It's part of his office. Finally, I just want to talk about the Ward case since it was brought up. Your time has expired, but if you want to take a moment to just sum up. Okay, may I address the Ward case, or do you want me to? May take a moment to sum up, please. The facts of that case are very different. In that case, part of the issue was that the attorney's office had no reason to know that that attorney and the client were spending time outside of the office. And, of course, it would be appropriate for that attorney to spend time with his own client in the office on professional duties. They didn't have anything to make a nexus. There was something beyond that going on, whereas our facts are very different, where we do have knowledge that's alleged that they were spending time outside of the office. I'd also point out that the Ward versus Kutak was a Rule 23 holding, and admittedly, we cited it under 23EB1, which allows for more recent holdings to be cited for persuasive purposes only. And the sole persuasive purpose we intended was to show that in more recent cases, the Doe versus Coe holding was being followed. I think defense counsel has gone well past that. They spent three pages of their brief discussing the facts of that case in depth, essentially arguing that it should act as some sort of a precedent. Again, it was cited by both sides, so I'll let the panel do with it what you will. But I appreciate your time again, and thank you for having us here today. I'm sorry, do you have any more questions for me? I shouldn't assume. No, sir, we do not. I want to thank both counsel for your arguments this morning, and your time to travel out to Aurora University for today's argument. We will take a short recess and prepare for the second case, which will begin approximately 1030.